IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KIMBERLY E. SWINDOLL,                   :
                                        :
      Plaintiff,                        :
                                        :
vs.                                     :      CIVIL ACTION 15-0327-KD-M
                                        :
CAROLYN W. COLVIN,                      :
Commissioner of Social Security,        :
                                        :
      Defendant.                        :

REPORT AND RECOMMENDATION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*).  The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed.R.Civ.P. 72, and S.D.Ala. Gen.L.R. 72.  Oral argument was heard on January 25, 2016.  Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is recommended that the decision of the Commissioner be affirmed, that this action be dismissed, and that judgment be entered in favor of Defendant Carolyn W. Colvin and against Plaintiff Kimberly E. Swindoll.

1

This Court is not free to reweigh the evidence or
substitute its judgment for that of the Secretary of Health and
Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239
(11th Cir. 1983), which must be supported by substantial
evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The
substantial evidence test requires "that the decision under
review be supported by evidence sufficient to justify a
reasoning mind in accepting it; it is more than a scintilla, but
less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918
(11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205
(D. Md. 1982).

At the time of the administrative hearing, Plaintiff was
thirty-three years old, had completed a high school education
(Tr. 50), and had previous work experience as a dental assistant
(Tr. 52).  In claiming benefits, Plaintiff alleges disability
due to depression, anxiety, low back pain, diabetes mellitus,
seizure disorder, obesity, and hypertension (Doc. 9 Fact Sheet).

The Plaintiff filed applications for disability insurance
and SSI on June 20, 2012, alleging a disability onset date of
December 31, 2009 (Tr. 24, 182-93).  Benefits were denied
following a hearing by an Administrative Law Judge (ALJ) who
determined that although she could not return to her previous

work, there were specific light work jobs Swindoll could perform
(Tr. 24-36).  Plaintiff requested review of the hearing decision
(Tr. 12-13) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not
supported by substantial evidence.  Specifically, Swindoll
alleges that:  (1) The ALJ did not properly assign controlling
weight to her treating physician's conclusions; (2) the ALJ
erred in failing to assign weight to three consultative
psychologists; and (3) the ALJ improperly gave weight to a non-
examining physician's conclusions over those of her treating
physician and three consultative psychologists (Doc. 9).
Defendant has responded to—and denies—these claims (Doc. 10).
The relevant evidence of record follows.[1]

On October 7, 2008, Psychologist John W. Davis examined
Swindoll at the request of the Social Security Administration
(hereinafter *SSA*); he noted nothing unusual in her gait,
posture, mannerisms, or hygiene (Tr. 318-23).  He judged her a
reliable historian.  Plaintiff had had a problem with Lortab[2] and
attempted suicide ten months earlier; she had been clean for a

---

[1]The Court will not summarize evidence that pre-dates the alleged
disability date of December 31, 2009 or does not relate to the claims
raised in this action.

[2]*Lortab* is a semisynthetic narcotic analgesic used for "the
relief of moderate to moderately severe pain."  *Physician's Desk*

year but had prescriptions for Cymbalta[3], Ultram[4] and to prevent

seizures.  Swindoll was oriented in three spheres and had no

loose associations, tangential or circumstantial thinking, or

confusion; judgment and insight were good.  Though Swindoll had

completed high school in a regular curriculum, Davis estimated

her intellectual level as low average.  The Psychologist's

impression was Depression, NOS, and Seizures; his final thoughts

follow:

> This claimant has the ability to do
> simple, routine, repetitive type tasks.  She
> can get along with others.  She can manage
> any benefits that may be forthcoming.
> The mental capacity of this claimant
> should be considered as an add-on factor but
> in and of itself is not disabling.
> Decisions about her disability need to be
> based on the general medical condition of
> this claimant.

(Tr. 323).

Records show regular treatment at Mostellar Medical Center,

beginning June 16, 2008 and continuing through October 27, 2010,

for diabetes, gastroenteritis, seizures, pneumonia, chronic

---

*Reference* 2926-27 (52nd ed. 1998).

[3]Cymbalta is used in the treatment of major depressive disorder.
*Physician's Desk Reference* 1791-93 (62nd ed. 2008).

[4]*Ultram* is an analgesic "indicated for the management of moderate
to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed.
2000).

pain, a staph infection, anxiety, depression, high blood pressure, and respiratory/sinus problems for which she was treated with Tramadol,[5] Darvocet,[6] Ultram, BuSpar,[7] Zoloft,[8] and Phenergan[9] (Tr. 324-89).  Notations were made several times that Plaintiff had an addiction problem.

Other records show that Franklin Primary Health Center (hereinafter *Franklin PHC*) began treating Swindoll, as early as June 5, 2009, for hypertension, type two diabetes mellitus, low back pain, a seizure disorder, anxiety, depression, and obesity for which she was prescribed Zoloft, Trazadone,[10] Tramadol, Oxycodone,[11] Ultram, and exercise (Tr. 634-51).

On February 4, 2011, Swindoll was examined at Franklin PHC for itchy bumps all over her body for the previous two months

---

[5]*Tramadol* "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time." *Physician's Desk Reference* 2520 (66th ed. 2012).

[6]*Propoxyphene napsylate*, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation.  *Physician's Desk Reference* 1443-44 (52nd ed. 1998).

[7]*BuSpar* is used to treat anxiety and irritability.  *See* http://www.drugs.com/buspar.html

[8]*Zoloft* is "indicated for the treatment of depression." *Physician's Desk Reference* 2229-34 (52nd ed. 1998).

[9]*Phenergan* is used as a sedative, sleep aid, or to treat nausea, vomiting, or pain.  http://www.drugs.com/phenergan.html

[10]*Trazadone* is used for the treatment of depression.  *Physician's Desk Reference* 518 (52nd ed. 1998).

[11]*Oxycodone* is a pure agonist opioid whose principal therapeutic action is analgesia.  *Physician's Desk Reference* 2680-81 (62nd ed.

and low back pain, rated as seven on a ten-point scale; she had
not taken her blood pressure medications in two weeks.  (Tr.
503-04, 632-33).  Plaintiff was treated for Scabies and
prescribed Tramadol, Oxycodone, and Zoloft.  On March 4, 2011,
Swindoll was encouraged to exercise and diet (Tr. 501-02, 630-
31).

On April 4, at the request of the SSA, Psychologist Lucile
T. Williams examined Swindoll who complained of "seizures, neck
and back problems, depression, and anxiety attacks;" her
medications included Zoloft, Trazadone, Pristiq,[12] and Oxycodone
(Tr. 406; *see generally* Tr. 406-07).  Affect was tearful and her
mood was mildly depressed.  Thought processes were grossly
intact with no confusion; insight, understanding of self, and
judgment were poor.  The Psychologist estimated Swindoll's
intelligence was average; her impression was Depressive
Disorder, NOS.  Williams's prognosis was that "within the next
six to twelve months [Swindoll] will have a favorable response
to treatment including psychotherapy" (Tr. 407).

On April 26, at the request of the SSA, Dr. Jonathan C.
Campbell, Family Practitioner, examined Plaintiff whose

---

2008).
   [12]*Pristiq* is used in treating depression and anxiety.
http://www.webmd.com/drugs/2/drug-150251/pristiq-oral/details

complaints included chronic, radiating, low back pain,
controlled seizure disorder, and major depression; Swindoll
walked without a cane or difficulty (Tr. 409-13).   Range of
motion (hereinafter *ROM*) was normal in her neck and extremities;
there were mild lumbar spine limitations, but no tenderness.
There were no motor or sensory deficits; grip strength was 5/5
bilaterally.   Campbell stated as follows:

> From a physical standpoint, the
> claimant's ability to do work related
> activities such as sitting, standing,
> walking, lifting, carrying and handling
> objects, hearing, speaking and traveling
> appears to be adequate for normal duty.
> However, from a mental standpoint the
> patient may not be capable of this and my
> need further evaluation by a mental health
> specialist.

(Tr. 411).

On May 5, Franklin PHC records demonstrate Plaintiff
complaining of low back pain at a level eight; prescriptions
were refilled (Tr. 499-500, 628-29).   Over the course of the
next year, Swindoll was examined four times, routinely
complaining of low back pain; no changes in treatment were noted
(Tr. 490-97, 620-27).

On May 10, Plaintiff went to the Providence Hospital
Emergency Room for excruciating back pain; she was admitted for

7

four nights and treated with IV fluids for hypotensive renal
failure (Tr. 415-55). Gallstones were discovered, but surgery
was unnecessary; Swindoll's thyroid studies were abnormal, but
"[o]verall, her hospitalization course was relatively
uneventful" (Tr. 426). Testing showed mild disc space narrowing
at L5-S1 and minimal anterior osteophyte formation at T11-12 and
T9-10.

On July 20, 2012, Plaintiff was examined at the Mobile
County Department of Health for elbow joint pain for which she
was prescribed Zanaflex[13] (Tr. 469-71). A week later, Swindoll
was seen in follow-up pursuant to a test demonstrating an
increased triglyceride level (Tr. 464-68). Ambien[14] was
prescribed for insomnia.

On August 10, Dr. Michael Sforzini, at Franklin PHC,
examined Swindoll for middle and lower back and neck pain; he
noted normal ROM, muscle strength, and stability in all
extremities with no pain on inspection (Tr. 485-89, 616-19).

On October 8, at the request of the SSA, Jack C. Carney,
Psychologist, examined Swindoll who complained of anxiety and

---

[13]*Zanaflax* "is a short-acting drug for the acute and intermittent
management of increased muscle tone associated with spasticity."
*Physician's Desk Reference* 3204 (52nd ed. 1998).

depression; she was oriented in three spheres with no signs of confusion, loose associations, tangential, or circumstantial thinking (Tr. 506-09).  Plaintiff had poor judgment, limited insight and was estimated to be functioning in the low average range of intelligence.  Carney diagnosed her to have Major Depression and Anxiety Disorder, NOS.  The Psychologist found that Plaintiff was capable of completing all personal activities of daily living independently; with regard to her ability to maintain social functioning as well as concentration, persistence, or pace, Carney only reported Swindoll's own statements.  The Psychologist's prognosis was that Plaintiff would have a favorable response to treatment within six-to-twelve months.

On October 26, 2012, Dr. Harold R. Veits, a Non-Examining Physician who reviewed the evidence available at that time, determined that Plaintiff did not meet the requirements for the Listings concerning Affective Disorders, Anxiety-Related Disorders, Personality Disorders, or Substance Addiction Disorders (Tr. 79-95).  Veits further concluded that Swindoll had mild restriction of activities of daily living, moderate

---

[14]*Ambien* is a class four narcotic used for the short-term treatment of insomnia.  *Physician's Desk Reference* 2799 (62nd ed. 2008).

difficulties in maintaining social functioning, moderate
difficulties in maintaining concentration, persistence or pace,
and had had only one or two episodes of decompensation of
extended duration.  Veits indicated that Plaintiff's statements
regarding her impairments were only partially credible.

On November 12, 2012, Dr. Sforzini examined Plaintiff for
hypertension and diabetes; on exam, he noted lumbar muscle spasm
and pain, but no joint pain or swelling (Tr. 612-15).

On January 3, 2013, Dr. Sforzini noted that Swindoll was
being treated for the following diagnoses:  (1) Diabetes
Mellitus Type 2, Uncomplicated; (2) Hypertension, Benign; (3)
Other and unspecified hyperlipidemia; (4) Epilepsy, unspecified,
without mention of intracta; (5) Backache; and (6) Anxiety; all
were described as chronic (Tr. 515-17, 609-11).  The Doctor
noted normal ROM, muscle strength, and stability in all
extremities with no pain on inspection; Sforzini ordered a
cholesterol test.  The Doctor completed a Questionnaire
indicating that Swindoll had Diabetes and she could work full-
time with only slight limitations (Tr. 511-12).  On the same
day, the Doctor completed a Mental Residual Functional Capacity
Questionnaire indicating that Plaintiff had marked restrictions
in her daily living activities, an extreme degree of difficulty

in maintaining social functioning, constant deficiencies of
concentration, persistence or pace resulting in failure to
complete tasks in a timely and appropriate manner, and would
experience four or more episodes of decompensation in a work-
like setting that would cause her to withdraw or experience
exacerbation of her symptoms for at least two weeks (Tr. 513-
14).  Sforzini further indicated that Plaintiff would be
markedly limited in her ability to respond appropriately to co-
workers and customary work pressures; she would be extremely
limited in her ability to perform repetitive tasks and complete
activities in a normal workday or workweek.  The Doctor stated
that Swindoll's medications cause sedation, low blood sugar, and
decreased concentration; he thought she was disabled and had
been since 2007.

On March 20, 2013, Dr. Sforzini noted neck and back pain;
Plaintiff had lost weight (Tr. 605-08).

On September 23, Swindoll was examined by Krishna K. Pasala
at Franklin PHC for hypertension and diabetes; her pain was at
level four (Tr. 600-04).

Records from USA OB/GYN Clinic demonstrate pre- and post-
treatment for pregnancy with delivery on December 12 without
complication (Tr. 652-729; *see also* Tr. 730-49).

On January 10, 2014, Swindoll was examined at Stanton Road Clinic; she complained of severe back pain (eight-to-ten in severity) for which she sought an increased dosage of Oxycodone (Tr. 750-55).  The examination was relatively normal; it was noted that Plaintiff was suffering post-partum depression and her Zoloft prescription dosage had been doubled.  An oxycodone prescription was made for the past dosage amount, but Swindoll first had to sign a contract stating that she would not receive pain medication from any other doctor.

The ALJ, in reaching her determination, held that Plaintiff could perform a limited range of light work, identifying specific jobs existing in the national economy (Tr. 24-36).  In reaching this conclusion, the ALJ gave great weight to Veits's psychiatric review technique assessment (Tr. 29, 33), some weight to Dr. Campbell's conclusions (Tr. 33), and little weight to the conclusions of Dr. Sforzini (Tr. 29, 34); the ALJ also discounted Swindoll's statements regarding her impairments as not fully credible (Tr. 33), a finding gone unchallenged in this action (*see* Doc. 9).  This concludes the Court's summary of the evidence.

In bringing this action, Swindoll first claims that the ALJ did not properly consider—and giving controlling weight—to the

conclusions of her treating physician, Dr. Sforzini (Doc. 9, pp. 5-9).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[15] *see also* 20 C.F.R. § 404.1527 (2015).

The ALJ rejected Dr. Sforzini's findings, in his questionnaire, that Swindoll had marked restrictions in activities of daily living, extreme difficulties in social functioning, extreme difficulties with regard to concentration, persistence, or pace; and experienced four or more episodes of decompensation, each of extended duration (Tr. 29).  In reaching this conclusion, the ALJ noted that Dr. Campbell's assessment of Plaintiff's physical abilities was more consistent with the record as a whole than the conclusions of Dr. Sforzini; likewise, the ALJ found that Dr. Veits's conclusions regarding Swindoll's mental abilities was more consistent with the record than those of Dr. Sforzini (Tr. 34).  In reaching that conclusion, the ALJ cited multiple other exhibits (Tr. 34).  The

---

[15]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Court notes that Sforzini's own medical records do not support the extreme limitations he suggested; furthermore, there is no basis of support for the Doctor's conclusion that Plaintiff had been disabled since 2007, especially in light of Swindoll's asserted disability onset date of December 31, 2009.  The Court finds substantial support for the ALJ's determination that Sforzini's conclusions were to be given little weight.

Plaintiff next claims that the ALJ erred in failing to state what weight she gave to three consultative psychologists (Davis, Williams, and Carney) (Doc. 9, pp. 4-5).  The Court notes that the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  Furthermore, social security regulations provide the following instruction:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the

14

> individual and to any subsequent reviewers
> the weight the adjudicator gave to the
> individual's statements and the reasons for
> that weight.

SSR 96-7p (Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an Individual's Statements).

The Court notes that although the ALJ did not cite the Psychologists by name, her determination repeatedly references them by exhibit number (*see* Tr. 27, 28, 29, 31, 32, 33, 34).[16] The Court further notes that although Swindoll correctly asserts that the ALJ did not state what weight she gave those opinions, it is evident that she relied on them to form the basis of her determination that Plaintiff was not disabled.  Careful review of Williams's and Carney's records fails to sway this Court to believe that they were not properly considered.  Swindoll's claim otherwise is without merit.

Finally, Plaintiff asserts that the ALJ improperly gave weight to a Non-Examining Physician's conclusions over those of her treating physician and three consultative psychologists.

---

[16]Psychologist Williams's and Carney's records are referenced as Exhibits B7F and B13F respectively.  The Court further notes that although there is no apparent reference to Dr. Davis or his conclusions, his evaluation of October 7, 2008 pre-dates Swindoll's asserted date of disability by more than a year; failure to reference Davis's records is, at most, harmless error.

15

Swindoll refers to Dr. Veits as the Non-Examining Doctor (Doc. 9, pp. 2-4).  Swindoll relies on *Coleman v. Barnhart*, 264 F.Supp.2d 1007, 1010-11 (S.D. Ala. 2003), rendered a dozen years ago by this Court, holding that an ALJ's determination of non-disability was not supported by the evidence unless there was a physical capacities evaluation rendered by a treating or examining physician.

However, *Coleman* was not generally accepted as the law of this Circuit.  In *Packer v. Astrue*, 2013 WL 593497, *3 (S.D. Ala. February 14, 2013), U.S. District Court Judge Granade noted that "[s]ince *Coleman*, numerous courts have upheld ALJs' [residual functional capacity] determinations notwithstanding the absence of an assessment performed by an examining or treating physician."  *Id.*  Plaintiff's reliance on *Coleman* is misplaced here as well.

Dr. Sforzini was the only examining source in this record providing an opinion regarding Swindoll's mental abilities and/or limitations.  Those limitations bore no resemblance to any other evidence in the record, including his own treatment notes.  Not even the records of the three consultative psychologists provided any support for such extreme limitations. Dr. Veits's conclusions more closely resembled the reports of

the three consultative Psychologists, even though they did not provide mental functional capacity evaluations.  Plaintiff's claim that the ALJ improperly relied on the Non-Examiner's conclusions is without merit.

Swindoll raised three claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is recommended that the Secretary's decision be affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be dismissed, and that judgment be entered in favor of Defendant Carolyn W. Colvin and against Plaintiff Kimberly E. Swindoll.

<u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 7(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party

failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 27th day of January, 2016.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE